Carolyn Sieve (SBN 182763)
csieve@constangy.com
Aaron M. Rutschman (SBN 288273)
arutschman@constangy.com
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
2029 Century Park East, Suite 1100
Los Angeles, CA 90067
Telephone: 310.909.7775
Facsimile: 424.465.6630

Attorneys for Defendant
CENTERPLATE, INC.
(erroneously named "CENTERPLATE")

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTELA ALVAREZ, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CENTERPLATE, an unknown business entity; THE VOLUME SERVICES AMERICA, INC., an unknown corporation; and DOES 1 through 25, Inclusive,<br><br>Defendants. | Case No. **'21 CV2120 CAB MDD**<br><br>[*Removed from San Diego County Superior Court*, Case No. 37-2021-00043500-CU-OE-CTL]<br><br>**DEFENDANT CENTERPLATE, INC.'S NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332, 1367, 1441 AND 1446 (DIVERSITY JURISDICTION)**<br><br>Action Filed:   October 12, 2021<br>Removal Date:   December 22, 2021 |

NOTICE OF REMOVAL OF CIVIL ACTION UNDER §§ 1332, 1367, 1441 AND 1446

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF ESTELA ALVAREZ, AND HER COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant Centerplate, Inc. (erroneously named as "Centerplate") hereby removes this action from the Superior Court of California, County of San Diego, to the United States District Court for the Southern District of California. This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity of citizenship exists and the amount in controversy exceeds $75,000, exclusive of interest and costs. Accordingly, this action is removable under 28 U.S.C. §§ 1441 and 1446. The following is a short and plain statement of the grounds for removal pursuant to 28 U.S.C. § 1446(a).

## PROCEDURAL BACKGROUND

1. This case arises from the former employment of Plaintiff Estela Alvarez with Service America Corporation dba Centerplate ("Service America Corporation"), a subsidiary of Defendant Volume Services America, Inc. (erroneously named as "The Volume Services, Inc."), which in turn is a subsidiary of Centerplate, Inc. (Declaration of David Winarski ["Winarski Decl."] ¶¶ 3, 4).

2. On October 12, 2021, Plaintiff filed this action in the Superior Court of the State of California, County of San Diego, Case No. 37-2021-00043500-CU-OE-CTL (the "State Court Action"). In her Complaint, Plaintiff asserts five (5) claims under the Fair Employment and Housing Act ("FEHA") for: (1) gender discrimination, (2) retaliation/wrongful termination, (3) failure to prevent discrimination and harassment, (4) failure to engage in the interactive process, and (5) failure to accommodate. She also asserts causes of action for: (6) failure to provide equal pay, (7) retaliation pursuant to Labor Code § 1197.5(j)(1), (8) retaliation pursuant to Labor Code § 1102.5, intentional infliction of emotional distress, (9) intentional infliction of emotional distress, and (10) negligent supervision.

## TIMELINESS OF REMOVAL

3. On November 22, 2021, Plaintiff served Centerplate, Inc. with a: (1) Summons; (2) Notice of Case Assignment and Case Management Conference; (3) Complaint; (4) First Amended General Order on Mandatory Electronic Filing for Civil; (5) Civil Case Cover Sheet; (6) Stipulation to Use Alternative Dispute Resolution; and (7) Alternative Dispute Resolution (ADR) Information Package. True and correct copies of these documents are attached as **Exhibits 1 through 7**.

4. As of the filing of this Notice of Removal, no named defendant besides Centerplate, Inc. has been served with the Summons and Complaint. (Winarski Decl. ¶ 11). Defendant Volume Services America, Inc. (erroneously named "The Volume Services America, Inc."), though it has not been served with the Summons and Complaint,[1] consents to the removal of this action to federal court. (Winarski Decl. ¶¶ 11, 12.)

5. On December 21, 2021, Centerplate, Inc. filed in the State Court Action its Answer to the Complaint, as required by the California Code of Civil Procedure. Centerplate, Inc. also filed a peremptory challenge pursuant to California Code of Civil Procedure Section 170.6. A true and correct copy of Centerplate, Inc.'s Answer is attached hereto as **Exhibit 8**. A true and correct copy of the peremptory challenge filed by Centerplate, Inc. is attached hereto as **Exhibit 9**. To Centerplate, Inc.'s knowledge, the documents described in paragraphs 3, 4, and 5 constitute all of the state court pleadings, process, and orders to date. No other process, pleadings, or papers have been filed in said action and no further proceedings have been had.

6. Plaintiff has not identified Defendants "Does 1 through 25, inclusive," nor is there any record of their having been served with the Summons or the Complaint in the State Court Action.

---

[1] Plaintiff filed a Proof of Service regarding Volume Services America, Inc. However, the registered agent identified in the Proof of Service is not the registered agent for Volume Services America, Inc. (*See* Winarski Decl. ¶ 11.)

1  7. This removal is timely filed as required by 28 U.S.C. § 1446(b) having been accomplished within 30 days of the date service was effected on Centerplate, Inc., which was November 22, 2021, and within one year of the date the State Court Action was filed on October 21, 2021.

## DIVERSITY JURISDICTION

8. **Basis of Original Jurisdiction.** Centerplate, Inc. is entitled to remove the State Court Action on the ground that this Court has original jurisdiction in this action pursuant to 28 U.S.C. § 1332 and it is an action which may be removed to this Court by Centerplate, Inc. pursuant to the provisions of 28 U.S.C. § 1441(b) because: (1) this action is a civil action between citizens of different states, as Plaintiff is a citizen of California and Centerplate, Inc. and Volume Services America, Inc. are citizens of Delaware, Maryland, and Connecticut, and (2) this action involves an amount in controversy that exceeds the sum of $75,000, exclusive of interests and costs as described below.

9. **Plaintiff's Citizenship.** For diversity purposes, an individual's citizenship is determined by the individual's domicile. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is her permanent home, where she resides with the intent to remain or to which she intends to return. *Lew v. Moss,* 797 F.2d 747, 749 (9th Cir. 1986). Service America Corporation employed Plaintiff at the San Diego Convention Center in San Diego, California. (Winarski Decl. ¶ 9.) When she applied for employment at Service America Corporation, Plaintiff resided in Chula Vista, California, as she provided Service America Corporation with an address in Chula Vista, California in her employment application. (*Id.* ¶ 10.) During her employment at Service America Corporation, Plaintiff informed the company when her residential address occasionally changed, but she always resided in southern California. (*Id.*) Service America Corporation sent Plaintiff a notice that her employment was terminated to her residential address in National City, California. (*Id.*) Also, as of the date of this

1  Notice of Removal, Service America Corporation has not received any notice from
2  Plaintiff reflecting a change of address outside of California and intends to send her
3  2021 IRS Form W2 to the same residential address in National City, California that
4  she maintained throughout her employment. (*Id.*)

5  In addition, at the time Plaintiff submitted her administrative charge with the
6  California Department of Fair Employment and Housing ("DFEH") on October 13,
7  2020, she declared that she was a resident of the State of California. A true and
8  correct copy of Plaintiff's DFEH charge is attached as **Exhibit 10**. Likewise, in her
9  Complaint that she filed on October 8, 2021, Plaintiff alleges that she "is a natural
10 person who is, and at all relevant times was, a lawful permanent resident of the
11 United States and a domicilary of the State of California." (Compl. ¶ 1, Ex. 3.) As
12 a result, Plaintiff is domiciled in California and is therefore a citizen of California.

13 10. **Defendants' Citizenship.** The citizenship of a corporation is both the
14 state of its incorporation and the state of its principal place of business. 28 U.S.C. §
15 1332(c)(1). When determining a corporation's principal place of business for
16 purposes of diversity jurisdiction, courts refer to the place where a corporation's
17 officers direct, control, and coordinate the corporation's activities. *Hertz Corp. v.*
18 *Friend*, 559 U.S. 77, 92–93 (2010). The principal place of business is where the
19 corporation "maintains its headquarters—provided that the headquarters is the
20 actual center of direction, control and coordination." *Id.*

21 a. Citizenship of Centerplate, Inc. (Delaware, Maryland, and
22 Connecticut). Defendant Centerplate, Inc. is incorporated in Delaware. (Winarski
23 Decl. ¶ 5). Additionally, Centerplate, Inc.'s principal place of business, and the
24 locations from which its high-level officers (i.e. Chief Executive Officer and Chief
25 Financial Officer) direct, control, and coordinate the corporation's activities, are
26 Gaithersburg, Maryland (the location of the Chief Executive Officer) and Stamford,
27 Connecticut (the location of the Chief Financial Officer). These high-level corporate
28 officers in Gaithersburg, Maryland and Stamford, Connecticut are responsible for

4
NOTICE OF REMOVAL OF CIVIL ACTION UNDER §§ 1332, 1367, 1441 AND 1446

1  the direction, control, and coordination of Centerplate, Inc.'s activities. (Winarski
2  Decl. ¶ 6). Centerplate, Inc. does business in a number of states and does not
3  conduct the substantial predominance of its business in any single state. (Winarski
4  Decl. ¶ 8.)

5        b.  <u>Citizenship of Volume Services America, Inc. (Delaware,
6  Maryland, and Connecticut)</u>. Defendant Volume Services America, Inc., is
7  incorporated in Delaware. (Winarski Decl. ¶ 5.)  Additionally, Volume Services
8  America, Inc.'s principal places of business, and the locations from which its high-
9  level officers (i.e., a Chief Executive Officer and a Chief Financial Officer) direct,
10 control and coordinate the corporation's activities, are Gaithersburg, Maryland (the
11 location of the Chief Executive Officer) and Stamford, Connecticut (the location of
12 the Chief Financial Officer). These high-level corporate officers in Gaithersburg,
13 Maryland and Stamford, Connecticut are responsible for the direction, control and
14 coordination of Volume Services America, Inc.'s activities. (Winarski Decl. ¶ 7.)
15 Like Centerplate, Inc., Volume Services America, Inc. does business in a number of
16 states and does not conduct the substantial predominance of its business in any
17 single state. (Winarski Decl. ¶ 8.)

18       c.  <u>Citizenship of Unnamed "Doe" Defendants</u>. The defendants
19 Plaintiff designates as Does 1 through 25 in the Complaint are fictitious defendants
20 and are not parties to this action. Unnamed defendants, such as Doe defendants, are
21 not required to join in a removal petition. The Court may therefore disregard their
22 citizenship for purposes of determining diversity jurisdiction. 28 U.S.C. § 1441(a);
23 *Fristoe v. Reynolds Metal Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980).

24   11.  **Amount in Controversy**. Service America Corporation, a wholly
25 owned subsidiary of Volume Services America, Inc., employed Plaintiff for more
26 than fifteen (15) years. (Winarski Decl. ¶ 9.) Centerplate, Inc. alleges that based on
27 Plaintiff's Complaint, it is facially apparent that the amount in controversy in this
28 action exceeds the jurisdictional sum or value of $75,000. "The calculation of the

1  amount in controversy takes into account claims for 'general' damages,' 'special'
2  damages, punitive damages if recoverable as a matter of law." *Rippee v. Boston*
3  *Mkt. Corp.*, 408 F. Supp. 2d 982, 984 (S.D. Cal. 2005); *see e.g.*, *Kroske v. U.S. Bank*
4  *Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (factual allegations in the Complaint,
5  along with the types of damages plaintiff sought made it facially apparent that the
6  amount in controversy exceeded the $75,000 jurisdictional amount).[2]
7      a.    <u>Compensatory Damages.</u> Plaintiff alleges that as a result of
8  Centerplate, Inc.'s conduct, she has "sustained and continues to sustain substantial
9  losses in earnings, employment benefits, [and] employment opportunities." (Compl.
10 ¶¶ 81, 88, 96, 107, 118, 127, 133, 143, 150, and 158, Ex. 3.) Accordingly, she seeks
11 economic damages, which include both back wages and front pay. At the time
12 Service America Corporation terminated Plaintiff's employment as a full-time
13 Steward on November 11, 2019, Plaintiff was paid an hourly wage of $15.85.
14 (Winarski Decl. ¶ 9.) Plaintiff was also eligible for other employee benefits, which
15 have not been factored into her wages as provided above. (*See id.* ¶ 4; Compl. ¶¶ 81,
16 88, 96, 107, 118, 127, 133, 143, 150, and 158, Ex. 3.)
17     b.    There are approximately twenty-five (25) months between
18 November 11, 2019, the date Service America Corporation terminated Plaintiff's
19 employment (Winarski Decl. ¶ 9), and December 22, 2021, the date of Centerplate,
20 Inc.'s Notice of Removal in this action. Thus, if Plaintiff were to be able to recover
21 back wages spanning from the date of her termination to the date of Centerplate,
22 Inc.'s Notice of Removal (which Centerplate, Inc. contends she is not), Plaintiff
23 would be entitled to approximately twenty-five (25) months, or $68,472.00 in back
24 wages ($15.85 per hour x 40 hours per week x 108 weeks). Assuming this case

---

[2] By estimating the amounts Plaintiff may recover if she prevails, Centerplate, Inc. does not concede that Plaintiff will prevail on any of her claims or that, if she prevails, she is entitled to damages in any particular amount or at all. Centerplate, Inc. reserves the full right to dispute Plaintiff's claims with respect to both liability and damages.

proceeds to trial in June of 2023 (eighteen months after the Complaint was served), and assuming that Plaintiff remains without work through the time of trial, she will claim entitlement to about thirty-two (32) months of back pay, which would amount to $87,492.00 ($15.85 per hour x 40 hours x 138 weeks). In California, front pay awards generally span a number of years. *See Smith v. Brown-Forman Distillers Corp.*, 196 Cal. App. 3d 503, 518 (1987) (upholding an award of front pay until mandatory retirement age reached); *Rabago-Alvarez v. Dart Indus., Inc.*, 55 Cal. App. 3d 91, 97 (1976) (awarding a front pay award spanning over a four-year period); *Drzewiecki v. H&R Block, Inc.*, 24 Cal. App. 3d 695, 705 (1972) (where the front pay award totaled 10 years). Assuming that Plaintiff seeks a front pay award of four years (which is a conservative estimate if this scenario applied), that amount would total an additional $131,872.00, for a total of **$219,364.00** in front pay and back pay damages, which exceeds the $75,000 threshold.

   c. <u>Emotional Distress Damages.</u> Plaintiff further alleges that she "has suffered and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish." (Compl. ¶¶ 82, 89, 97, 108, 119, 128, 134, 144, 151, and 159, Ex. 3.) Emotional distress damages may be considered when calculating the amount in controversy even when not clearly pled in the Complaint. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002) (noting that while a retaliation case brought by a former employee would likely not result in an award of $3.5 million dollars in emotional distress damages, the court noted that "emotional distress damages in a successful employment discrimination case may be substantial."); *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) ("[t]he vagueness of plaintiffs' pleadings with regard to emotional distress damages should not preclude this Court from noting that these damages are potentially substantial"). While Plaintiff has not quantified her emotional distress damages, when considered with her claims for compensatory damages, even a nominal demand for $25,000 in emotional distress damages would

proceeds to trial in June of 2023 (eighteen months after the Complaint was served), and assuming that Plaintiff remains without work through the time of trial, she will claim entitlement to about thirty-two (32) months of back pay, which would amount to $87,492.00 ($15.85 per hour x 40 hours x 138 weeks). In California, front pay awards generally span a number of years. *See Smith v. Brown-Forman Distillers Corp.*, 196 Cal. App. 3d 503, 518 (1987) (upholding an award of front pay until mandatory retirement age reached); *Rabago-Alvarez v. Dart Indus., Inc.*, 55 Cal. App. 3d 91, 97 (1976) (awarding a front pay award spanning over a four-year period); *Drzewiecki v. H&R Block, Inc.*, 24 Cal. App. 3d 695, 705 (1972) (where the front pay award totaled 10 years). Assuming that Plaintiff seeks a front pay award of four years (which is a conservative estimate if this scenario applied), that amount would total an additional $131,872.00, for a total of **$219,364.00** in front pay and back pay damages, which exceeds the $75,000 threshold.

   c. <u>Emotional Distress Damages.</u> Plaintiff further alleges that she "has suffered and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish." (Compl. ¶¶ 82, 89, 97, 108, 119, 128, 134, 144, 151, and 159, Ex. 3.) Emotional distress damages may be considered when calculating the amount in controversy even when not clearly pled in the Complaint. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002) (noting that while a retaliation case brought by a former employee would likely not result in an award of $3.5 million dollars in emotional distress damages, the court noted that "emotional distress damages in a successful employment discrimination case may be substantial."); *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) ("[t]he vagueness of plaintiffs' pleadings with regard to emotional distress damages should not preclude this Court from noting that these damages are potentially substantial"). While Plaintiff has not quantified her emotional distress damages, when considered with her claims for compensatory damages, even a nominal demand for $25,000 in emotional distress damages would

1 push the total claimed damages in this case even further beyond the $75,000
2 threshold.

3       d.    <u>Punitive Damages.</u> Plaintiff also seeks to recover punitive
4 damages. (Compl. ¶¶ 14, 83, 90, 109, 120, 129, 145, 152, 160, Ex. 3.) Although
5 California law does not provide any specific monetary limit on the amount of
6 punitive damages which may be awarded pursuant to section 3294 of the California
7 Civil Code, the proper amount of punitive damages under California law is
8 generally based on the reprehensibility of a defendant's misdeeds, the ratio between
9 compensatory and punitive damages, and ratio between damages and the
10 defendant's net worth. *See Boyle v. Lorimar Prods., Inc.*, 13 F. 3d 1357, 1360 (9th
11 Cir. 1994). Punitive damages are included in calculating the amount in controversy.
12 *See Davenport v. Mut. Ben. Health & Acc. Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963);
13 *see also Aucina v. Amoco Oil Co.*, 871 F. Supp. 332, 334 (S.D. Iowa 1994). In
14 *Aucina*, the employer-defendant established that the amount in controversy
15 exceeded the jurisdictional minimum where the former employee asserted claims for
16 lost wages, lost benefits, mental anguish, and punitive damages. *Aucina*, 871 F.
17 Supp. at 334. The court noted that "[b]ecause the purpose of punitive damages is to
18 capture a [D]efendant's attention and deter others from similar conduct," a claim for
19 punitive damages could exceed the jurisdictional threshold amount of $75,000 on its
20 own. *Id.*

21       e.    <u>Attorneys' Fees.</u> Plaintiff also seeks to recover attorneys' fees
22 pursuant to section 12965(b) of the California Government Code. (Compl. ¶¶ 84,
23 91, 98, 110, 121, 130, 146, 153, 161, Ex. 3.) "[W]here an underlying statute
24 authorizes an award of attorneys' fees, either with mandatory or discretionary
25 language, such fees may be included in the amount in controversy." *Galt G/S v. JSS*
26 *Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998). "When assessing the amount in
27 controversy, the court considers the amount of attorneys' fees to be accrued
28 throughout the entirety of the litigation." *Cain v. Hartford Life & Acc. Ins. Co.*, 890

1 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012), *citing Simmons v. PCR Technology*, 209
2 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002). *See also Sasso v. Noble Utah Long Beach*
3 *LLC*, No. CV 14-09154-AB (AJWx), 2015 WL 898468, at *5 (C.D. Cal. Mar. 3,
4 2015); *Garcia v. ACE Cash Express, Inc.*, No. SACV 14-0285-DOC (RNBx), 2014
5 WL 2468344, at *5 (C.D. Cal. May 30, 2014). "[T]he Court can use its discretion to
6 determine, within its own experience, that an award of attorneys' fees alone will
7 satisfy the amount in controversy requirement." *James Dickey, Inc. v. Alterra Am.*
8 *Ins. Co.*, No. 2:15-cv-00963-ODW-DTB, 2015 WL 4537732, at *3 (C.D. Cal. July
9 27, 2015), citing *Cain v. Hartford Life and Acc. Ins. Co.,* 890 F. Supp. 2d 1246,
10 1250 (C.D. Cal. 2012). As such, even a minimum award of attorneys' fees "would
11 place the amount in controversy well in excess of $75,000." *Haase v. Aerodynamics*
12 *Inc.*, No. 2:09-cv-01751-MCE-GGH, 2009 WL 3368519, at *3, *5 (E.D. Cal. Oct.
13 19, 2009) (internal citations omitted).

14        12.   Plaintiff's alleged damages, request for attorneys' fees, and an award of
15 punitive damages satisfies the amount-in controversy requirement. *Simmons*, 209 F.
16 Supp. 2d at 1034 (holding that plaintiff's employment discrimination claim exceeds
17 the federal jurisdictional minimum, even though the lost wages at the time of
18 removal were just $26,500, because Plaintiff sought emotional distress damages,
19 punitive damages, and attorney's fees under FEHA); *Kroske,* 432 F. 3d at 980
20 (affirming removal of bank employee lawsuit, even though employee earned less
21 than $75,000 per year, because emotional distress damages in a FEHA claim could
22 reasonably be assumed to add enough to her lost wages and front pay to exceed the
23 jurisdictional amount); *see, e.g., White v. FCI USA, Inc.,* 319 F. 3d 672, 675–76 (5th
24 Cir. 2003) (holding that plaintiff's wrongful termination claim exceeds $75,000
25 based on her "lengthy list" of compensatory damages including loss of pay,
26 employment benefits, impaired earning capacity, emotional distress, and other
27 remedies). Accordingly, the amount in controversy in this action exceeds the
28 jurisdictional sum or value of $75,000.

## CONCLUSION

13. Complete diversity of citizenship exists inasmuch as Plaintiff is a citizen of California and Defendants Centerplate, Inc. and Volume Services America, Inc. are citizens of Delaware, Maryland, and Connecticut. Furthermore, the amount in controversy exceeds $75,000. Accordingly, this Court has diversity jurisdiction of this matter pursuant to 28 U.S.C. §§1332, 1441, and 1446, and Centerplate, Inc. has properly removed the State Court Action to this Court.

WHEREFORE, Centerplate, Inc. prays that the State Court Action be removed from the Superior Court of California, County of San Diego, to this Court.

Dated: December 22, 2021   **CONSTANGY, BROOKS, SMITH & PROPHETE LLP**

By: *(signature)*
Carolyn E. Sieve
Aaron M. Rutschman
Attorneys for Defendant
CENTERPLATE, INC. (erroneously named as "CENTERPLATE")